IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| MAHMOUD HAMADA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 2:19-cv-02777-DCN-BM |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| THE BOEING COMPANY and DAVE CARBON, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on United States Magistrate Judge Bristow Marchant's report and recommendation ("R&R") recommending that the court grant defendants The Boeing Company ("Boeing") and Dave Carbon's ("Carbon") (collectively, "defendants") motion to dismiss, ECF No. 34.  For the reasons set forth below, the court adopts the R&R and grants the motion to dismiss.

## I.  BACKGROUND

This action arises out of plaintiff Mahmoud Hamada's ("Hamada") employment with Boeing.  Hamada, who is Egyptian/Middle Eastern, began working for Boeing in 2014 as a Flight Readiness Mechanic.  He alleges that in 2015, he was accused of being a terrorist threat and was terminated from Boeing.  The FBI investigated Hamada and determined that he was not a terrorist four days later, but Boeing allegedly refused to rehire Hamada for three weeks.  Hamada also alleges that Carbon "published several false statements regarding" Hamada, including that Hamada had been accused of being a terrorist and had been terminated and rehired by Boeing because of litigation.  Am. Compl. ¶ 14.

1

In 2016, Hamada was assigned to work on the Dash-10 Test Plane Build Project, which entailed installing the full interior of three test Dash-10 planes, the newest version of the 787 Dreamliner. Then in 2017, he was assigned to work on the Test Plane Refurbishment Project, which converted the test planes for sale to commercial airlines. Hamada alleges that almost all of the employees who worked on this project were union supporters and wore their union badge lanyards, wrist bands, hats, and shirts, and that Hamada himself always wore his union wrist band and lanyard. Hamada alleges that in 2017, there was a plant-wide vote related to the union, which the union lost, and that after the vote, Carbon moved 70% of the Dash-10 mechanics to "buildings 20 and 30." Am. Compl. ¶ 22. This was a source of frustration for the mechanics.

Hamada alleges that from December 2017 to July 2018, he was supervised by Ryan F. Tracey and Keith McDonald ("McDonald"). McDonald allegedly "specifically hated the unions and regularly informed employees he left Boeing Seattle because of the unions and the rain." Am Compl. ¶ 23. Hamada explains that he rarely spoke to McDonald because of his attitude and unprofessionalism. Hamada then alleges that he "made a complaint against Keith McDonald and his differential treatment of employees based on Race, Religion, Color and National Origin." Am. Compl. ¶ 26.

While Hamada was employed with Boeing, his mother suffered from medical conditions related to her heart. Hamada applied for intermittent Family Medical Leave Act ("FMLA") leave from May 11, 2018 to June 6, 2018, which was approved. He applied again for intermittent FMLA leave on June 18, 2018 because his father went to the hospital, and he received preliminary approval from June 18, 2018 to June 21, 2018.

Hamada alleges that he returned to work on June 19, 2018 and learned that Boeing believed that his paperwork was incomplete.

Hamada alleges that on September 6 or 7, 2018, his father, who had traveled to Egypt with Hamada's mother, called him to tell him that Hamada's mother was in the hospital and not doing well. Hamada's father insisted that Hamada travel to Egypt and bring some of his mother's medications with him. Hamada told Boeing that he wanted to use vacation time for the next two weeks. Boeing preliminarily approved Hamada's leave and told Hamada that he would need to provide paperwork from his mother's physician. Hamada traveled to Egypt on September 8, 2018 and sent an email to Boeing on September 17, 2018 with paperwork from his mother's physician.

On September 18, 2018, Hamada received a letter from Boeing stating that they did not have sufficient information about his leave request. On October 8, 2018, Hamada received an email stating that his documentation was insufficient and his FMLA leave was denied.[1] Hamada allegedly attempted to contact Boeing and received no response. Hamada stayed in Egypt, and on October 24 or 25, he was informed by a coworker that he had been terminated. When Hamada arrived in New York on November 1, 2018, he received a voicemail from McDonald informing him that he had been terminated. Hamada went to Human Resources a few days later, where they allegedly would not tell Hamada why he had been terminated. Then on November 15, 2018, Hamada received a "CAM" from Boeing that stated that Hamada was terminated by McDonald. Am. Compl. ¶ 39.

---

[1] The court assumes that Hamada applied for FMLA leave after he used his two weeks of vacation time.

Hamada filed a charge of discrimination with the Equal Employment Opportunity Commission on January 28, 2019, and Hamada filed this action in the Court of Common Pleas in Charleston County, South Carolina on August 30, 2019. Defendants removed the case on September 30, 2019, ECF No. 1, and filed a motion to dismiss on October 7, 2019, ECF No. 5. After that motion was fully briefed, Hamada amended his complaint. ECF No. 19. The amended complaint includes claims for: (1) wrongful termination in violation of public policy; (2) FMLA violations; (3) slander; (4) race, national origin, and religious discrimination in violation of 42 U.S.C. § 1981 and Title VII; (5) retaliation for complaints regarding race discrimination; and (6) hostile work environment in violation of 42 U.S.C. § 1981 and Title VII. Defendants filed another motion to dismiss on January 24, 2020. ECF No. 20. Their motion seeks dismissal of the wrongful termination in violation of public policy, slander, and hostile work environment causes of action, dismissal of Carbon as a defendant, and the striking of any reference to sexual discrimination in the amended complaint.[2] Hamada filed his response on February 7, 2020, ECF No. 22, and defendants replied on February 14, 2020, ECF No. 23. The R&R was issued on March 30, 2020 and recommends granting defendants' motion. ECF No. 34. Hamada filed his objections to the R&R on April 12, 2020. ECF No. 36. Defendants replied to the objections on April 21, 2020. ECF No. 37.

## II.  STANDARD

The magistrate judge makes only a recommendation to the court. Mathews v. Weber, 423 U.S. 261, 270 (1976). The recommendation carries no presumptive weight, and the responsibility to make a final determination remains with the court. Id. at 270-71.

---

[2] These allegations were included in the amended complaint by mistake.

The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge . . . or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1). The court is charged with making a de novo determination of any portion of the R&R to which a specific objection is made. Id. However, de novo review is unnecessary when a party makes general and conclusory objections without directing a court's attention to a specific error in the magistrate judge's proposed findings. Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982).

### III.   DISCUSSION

Hamada raises seven objections to the R&R. In response, defendants argue that the court is not required to conduct a de novo review of Hamada's objections because they either lack specificity or advance identical arguments made to the magistrate judge. Defendants alternatively argue that Hamada's objections are based on arguments that were already rejected by the R&R. The court considers each argument in turn.

**A.  Necessity of De Novo Review**

The court must first determine whether Hamada's objections are specific enough to warrant de novo review. Given the brevity of the objections, the court lists them in their entirety:

> 1. The Court failed to consider the facts as presented in complaint [sic].
>
> 2. The Court failed to consider that 3 different state court judges have ruled that the plaintiffs' [sic] in these cases have presented valid causes of action for Wrongful Termination in Violation of Public Policy. Alton Owen v. The Boeing Company, Richard Mester v. The Boeing Company, Joe Delmaro v. The Boeing Company.

> 3. The Court failed to consider that the alternative remedy did not apply to the Plaintiff because the Plaintiff did not meet the requirements of an AIR 21 complaint.
>
> 4. The Court errored as the plaintiff's claims are sufficient to present a valid cause of action.
>
> 5. Failed to consider that the Defendant Carbon made false statements regarding the Plaintiff that led to his termination.
>
> 6. Failed and refused to consider the treatment received by the Plaintiff while employed with the Defendant after he was considered a terrorist based on his race.
>
> 7. The Court failed to consider that the Plaintiff was supervised by Keith McDonald and as stated in the complaint: Keith McDonald specifically hated the unions and regularly informed employees he left Boeing Seattle because of the unions and the rain. The Plaintiff rarely spoke to McDonald because of his attitude and unprofessionalism. Leading to a hostile work environment. Further included in the complaint the Plaintiff clearly stated that he made a complaint against Keith McDonald and his differential treatment of employees based on Race, Religion, Color and National Origin during his employment which could and did lead to a hostile work environment and his termination. As stated in the complaint McDonald terminated the Plaintiff despite at the time of Plaintiff's termination McDonald was not the Plaintiff's direct supervisor.

ECF No. 36 at 6–7. Since Hamada numbered his objections, the court will refer to them according to their number, i.e., "Objection # 1."

A district court "shall make a de novo determination of those portions of the report or <u>specified</u> proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1) (emphasis added); <u>see also</u> Fed. R. Civ. P. 72 ("[A] party may serve and file <u>specific</u> written objections to the proposed findings and recommendations." (emphasis added)). "An objection is specific if it 'enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute.'" <u>Dunlap v. TM Trucking of the Carolinas, LLC</u>, 288 F. Supp. 3d 654, 662 n.6 (D.S.C. 2017) (quoting <u>One Parcel of Real Prop. Known As 2121 E. 30th St.</u>, 73 F.3d 1057, 1059

(10th Cir. 1996)). "A specific objection to the Magistrate's Report thus requires more than a reassertion of arguments from the complaint or a mere citation to legal authorities." Jones v. BOP Diresctor, 2019 WL 5677536, at *1 (D.S.C. Nov. 1, 2019).

The court finds that Objection # 1 and Objection # 4 are not specific enough to warrant de novo review. Objection # 1 argues that the R&R "failed to consider the facts as presented" in the complaint. Hamada does not point the court to which allegations the R&R failed to consider, nor does Hamada argue how the R&R failed to consider those allegations "as presented." As to Objection # 4, Hamada simply argues that he has sufficiently pleaded his causes of actions and cites to the 12(b)(6) standard without explaining why Hamada has sufficiently pleaded his claims or directing the court to any specific error made by the R&R.

Given these conclusory objections and Hamada's failure to "direct the court to a specific error in the magistrate's proposed findings and recommendations," the court need only review the proportions of the R&R relevant to these objections for clear error. Orpiano, 687 F.2d at 47. After considering Objection # 1 and Objection # 4 and reviewing the record using the clear error standard, the court finds that Hamada's objections are without merit.[3]

Next, defendants argue that the court is not required to conduct a de novo review of Objection # 2 and Objection # 3 because Hamada's arguments about these objections are verbatim recitations of arguments presented to the magistrate judge.[4] Objections are

---

[3] To the extent Hamada argues that he sufficiently stated a claim within another specific objection, the court considers that argument below.

[4] Defendants argue this is true for Objection # 4 as well, but having already found that Objection # 4 is not subject to de novo review, the court does not consider the objection again here.

7

considered to not be specific, and therefore only call for a clear error review, when they are "merely almost verbatim restatements of arguments" that were previously made and "do not alert the court to matters which were erroneously considered by the Magistrate Judge." Ashworth v. Cartledge, 2012 WL 931084, at *1 (D.S.C. Mar. 19, 2012); see also Gallop v. Joyner, 2017 WL 2377680, at *1 n.3 (D.S.C. May 30, 2017), aff'd, 707 F. App'x 142 (4th Cir. 2017) ("Courts have found that objections that merely rehash arguments previously raised and addressed by the magistrate judge are insufficient to direct the court to a specific error in the magistrate judge's Report." (collecting cases)).

In Objection # 2, Hamada argues that the R&R failed to consider three similar state court cases in which the judges found that the plaintiffs presented valid causes of action for wrongful termination in violation of public policy: Alton Owen v. The Boeing Company, Richard Mester v. The Boeing Company, and Joe Delmaro v. The Boeing Company. Hamada mentioned these cases in his response to defendants' motion to dismiss. ECF No. 22 at 20. Because Hamada argues that the R&R failed to consider these cases, the court finds that he is not merely rehashing an argument he previously presented. Instead, he presented an argument based on these cases to the magistrate judge, and now he contends that the magistrate judge erred by failing to consider those cases. As such, this objection will receive de novo review.

In Objection # 3, Hamada claims that the R&R "failed to consider that the alternative remedy did not apply to the Plaintiff because the Plaintiff did not meet the requirements of an AIR 21 complaint." ECF No. 36 at 6. In Hamada's response brief, he argued that AIR21, which "protects airline employees who report violations of federal regulations from discharge or discrimination," does not provide an alternative remedy for

Hamada because Hamada had merely done his job and was not engaged in protected activity, as required by AIR21. ECF No. 22 at 15. Like with Objection # 2, the court finds that Hamada is not rehashing this argument but instead argues that the R&R failed to consider the argument in the first place. Therefore, the court will review de novo Objection # 3.

### B. De Novo Consideration of Objections

Next, the court considers Hamada's objections that warrant de novo review and ultimately finds none of them to be convincing.

#### a. Objection # 2

As discussed above, Hamada argues that the R&R failed to consider several state court cases with similar facts in which the judges found that the plaintiffs stated a claim for wrongful termination in violation of public policy. The R&R did not mention these cases, presumably because Hamada only provided citations to incorrect state court case numbers[5] or no case number at all and failed to attach the orders to his response brief. Upon searching the state court dockets, the court was able to locate the order denying the motion to dismiss in Owen v. The Boeing Company, Case No. 2019CP1003305. The order summarily denied the motion to dismiss with no legal analysis or discussion. The order is clearly not binding on the federal court, and without any reasoning provided as to why the motion to dismiss was denied, the court does not find the order to be persuasive either.

---

[5] The case number for Owen v. The Boeing Company is 2019CP10<u>0</u>3305, not 2019CP103305. The case number for Mester v. The Boeing Company is 2019CP<u>100</u>2556, not 2019CP0102556.

The court was also able to locate the order denying in part the motion to dismiss in <u>Mester v. The Boeing Company</u>, Case No. 2019CP1002556. That order is not a summary order; however, in analyzing the cause of action for wrongful termination in violation of public policy, the state court simply stated what the cause of action legally entails and then found that the plaintiff presented a proper claim. The court did not engage in any analysis, so again, the order is not binding nor is it persuasive. As to the final case mentioned by Hamada, <u>Joe Delmaro v. The Boeing Company</u>, Hamada did not bother to provide any citation, correct or not, and the court was unable to locate the docket for the case. In sum, these cases do not convince the court that Hamada has properly pleaded a claim for wrongful termination in violation of public policy.

      **b. Objection # 3**

Also discussed above, Hamada argues in Objection # 3 that the R&R failed to consider that an alternative remedy based on an AIR21 complaint did not apply here. As explained in the R&R, a plaintiff cannot contest his termination using a claim for wrongful termination in violation of public policy when an alternative statutory remedy exists. <u>Lawson v. S.C. Dep't of Corr.</u>, 532 S.E.2d 259, 261 (S.C. 2000). The R&R found that Hamada failed to sufficiently plead a wrongful termination in violation of public policy claim because Hamada has or had statutory remedies for his claim, making this cause of action inapplicable. ECF No. 34 at 5. The alternative remedy that exists or existed for Hamada was under the National Labor Relations Act ("NLRA"), and Hamada does not dispute the existence of that remedy. Therefore, it is irrelevant whether or not an alternative remedy based on AIR21 applied here, because the alternative remedy under NLRA exists. The court overrules this objection.

### c. Objection # 5

In Objection # 5, Hamada argues that the R&R failed to consider that Carbon made false statements about Hamada that led to Hamada's termination. In his slander cause of action, Hamada alleges that "the false statements were intentionally made by the Defendants, in order to have the Plaintiff terminated from his employment and damage his reputation in the Airline Industry." Am. Compl. ¶ 68. The R&R recommends dismissing Hamada's slander cause of action because Hamada's allegation that defendants made defamatory statements to third parties was conclusory and because Hamada failed to allege to whom the statements were made. As the complaint is pleaded, whether Carbon made false statements that led to Hamada's termination only has bearing on Hamada's slander claim, and Hamada does not object to the R&R's recommendations as to why the slander claim should be dismissed. Therefore, whether the R&R failed to consider the allegation that Carbon made false statements about Hamada that led to Hamada's termination is irrelevant because the slander claim was dismissed for other reasons.

### d. Objection # 6 and Objection # 7

Hamada next argues that the R&R failed and refused to consider the treatment Hamada received during his employment based on race after he was considered to be a terrorist as well as various factual allegations about Hamada's supervisor that are related to his hostile work environment claim. The court understands these objections to mean that Hamada believes that the R&R did not take his factual allegations into account when dismissing his hostile work environment claim.

The R&R dismissed the hostile work environment claim for two reasons. First, Hamada's response to defendants' argument for dismissal of this claim was one sentence: "The Plaintiff properly filed a charge of discrimination alleging race discrimination and hostile work environment based on race." ECF No. 22 at 22. The R&R found that Hamada's lack of any effective response alone could be considered grounds for dismissal. Nevertheless, the R&R turned to the merits of the claim and found that the hostile work environment claim under Title VII is barred by the statute of limitations. Hamada does not object to this finding, and any consideration of factual allegations cannot save a time-barred claim. Therefore, Hamada's objections as to a hostile work environment claim based on Title VII are overruled.

With regard to Hamada's § 1981 hostile work environment claim, the R&R concluded that Hamada failed to set forth any factual allegations sufficient to give rise to a plausible claim. Hamada's hostile work environment claim is premised on the alleged discrimination he suffered based on his race, national origin, and religion. As the R&R explains, Hamada alleges that "based on the actions of the Defendant in 2015 the Plaintiff suffered a Hostile Work Environment until his termination from Management." Am. Compl. ¶ 105. Those actions were that Hamada was accused of being a terrorist and terminated by Boeing, the FBI investigated Hamada and determined he was not a terrorist after four days, and that Boeing failed to rehire Hamada for three weeks. Am. Compl. ¶ 15. As the R&R points out, the rest of Hamada's factual allegations relate to the union and his FMLA leave. Hamada cites to no factual allegations about "the treatment received by the Plaintiff while employed with the Defendant after he was considered a terrorist based on his race," and the court was unable to find any.

Similarly, most of the allegations Hamada discusses in Objection # 7 relate to the union, not discrimination based on race, national origin, and religion. In his objection, Hamada argues that "Keith McDonald specifically hated the unions and regularly informed employees he left Boeing Seattle because of the unions and the rain." ECF No. 36 at 6. This is unrelated to an alleged hostile work environment based racial, national origin, and religious discrimination. The same is true for Hamada's next point: that he "rarely spoke to McDonald because of his attitude and unprofessionalism." Id. This allegation makes no mention of race, national origin, or religion. Hamada next notes that he alleges that "he had made a complaint against Keith McDonald and his differential treatment of employees based on Race, Religion, Color and National Origin during his employment which could and did lead to a hostile work environment and his termination." Id. at 6–7. However, this conclusory allegation is insufficient to state a claim for a hostile work environment, which requires the alleged harassment to be "sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere." Spriggs v. Diamond Auto Glass, 242 F.3d 179, 183 (4th Cir. 2001). There are simply no factual allegations that discuss "[t]he degree of hostility or abuse," such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. Therefore, the court overrules Hamada's final two objections as they related to his hostile work environment claim based on § 1981.

Finally, the court notes that at the end of the "procedural history" section of Hamada's objections, he notes that "[i]f the court had permitted the plaintiff to file an

13

amended complaint to clarify the Court [sic] would have permitted the case to move forward." ECF No. 36 at 3.  Even interpreting this as an objection, despite that it is not raised in the "objection" portion of Hamada's brief, the court finds it to be meritless.  Hamada had already amended his complaint once as a matter of course, and in his response brief, he did not request to amend his complaint as an alternative to the court dismissing his claims.  He only offered to file an amended complaint to "correct the scrivener's errors" of including allegations about sexual discrimination.  ECF No. 22 at 22.  Hamada cannot now object to the R&R failing to do something that he did not request in the first place.

## IV.   CONCLUSION

For the foregoing reasons the court **ADOPTS** the R&R and **GRANTS** the motion to dismiss.  Specifically, the court dismisses Hamada's claims for wrongful termination, slander, and hostile work environment, dismisses Carbon as a defendant, and strikes any sex discrimination allegations in the amended complaint.

**AND IT IS SO ORDERED.**

_____
DAVID C. NORTON
UNITED STATES DISTRICT JUDGE

**May 20, 2020**
**Charleston, South Carolina**